# ECLIPSE BICYCLE COMPANY v. FARROW.

APPEALS FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

Nos. 40, 217.    Argued November 3, 1905.—Decided December 18, 1905.

A bicycle manufacturing company made a contract with an inventor to use, obtain patents for, and exploit the sale of, improved coaster brakes, for which applications for patents were then pending, the company to be relieved from payment of royalties in case of adverse action of the patent office. Subsequently the company having acquired and used other inven-

tions the inventor brought suit alleging neglect to use diligence in obtaining the patents for, or pushing the sales of, his brakes and demanding royalties on all coaster brakes used and sold by the company. *Held* that: Although the company might not be able to obtain the patents as expected it could not rescind the contract without returning what it had received under it and it must pay royalties on any devices used by it embodying the invention unless and until final adverse action by the patent office.

That as the contract was not made on the footing that no such brakes had ever been invented the inventor could not claim the entire field and was not entitled to royalties on other brakes used by the company radically different from his both in construction and operation and which could not have been an infringement of any patent contemplated by the contract.

THE facts are stated in the opinion.

*Mr. A. S. Worthington* and *Mr. H. L. Osgood*, with whom *Mr. C. Schuyler Davis* and *Mr. D. S. Mackall* were on the brief for appellant.

*Mr. Henry M. Earle* and *Mr. John C. Gittings* for appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from a final decree upon a bill for an account. As there was a technical doubt whether the decree first appealed from was final, a second decree was entered and a second appeal taken, but no point is made upon that matter here. There is one question and one case. See 16 App. D. C. 468; 18 App. D. C. 101.

The bill was brought upon an agreement under seal, dated June 5, 1897, of which the material portions are as follows. It begins with a recital that Farrow has invented certain improvements in bicycles, etc., pertaining to automatic mechanism for coasting and braking, for which he has made two numbered applications for patents and intends to file additional ones, and that the Eclipse Bicycle Company desires to acquire the entire right and title "to said inventions as described in the above

identified applications, and any letters patent that may be issued thereon;" and to all improvements that may be made by Farrow upon the same. Then Farrow conveys to the company "his entire right, title and interest in and to the inventions in bicycles, as fully described and claimed in the applications above referred to," letters patent and improvements as above. The company is to pay $2,500 within certain short times as advanced payments on royalties, and to pay royalties, as specified, "on all the devices made or sold embodying the invention above referred to," and to that end to make returns of the number of devices sold. The title is to revert to Farrow in default of payment for more than sixty days. Arrangements are made for taking out foreign patents, and then the company agrees to "defend said invention against piracy or infringement," and to "use due business diligence in the manufacture and sale of the devices embodied in said letters patent, and push the sale by all proper and legitimate enterprise." Then follow further agreements as to taking out foreign patents, and finally it is covenanted that in case Farrow "for any reason fails to procure letters patent of the United States for the improvements above referred to, the [company] shall be relieved from the payment of all royalties from and after the date of final adverse action of the Patent Office on the application or applications for patents for said improvements." The invention described was an automatic brake and coaster, one of the applications being for a hub brake, the other for a tire brake, both operating on the rear wheel by back pedalling.

The bill alleges that soon after this agreement was made one Morrow, the defendant's general manager, applied for a patent on a device in effect the same as Farrow's, accomplishing the same result and being a mere mechanical equivalent for the same, that he forthwith assigned a half interest to the company's president, and that the company began to manufacture and sell the Morrow device. It further charges a failure to use the diligence which the company covenanted to use in pushing the Farrow device and a sale of substituted things. A supple-

mental bill alleges that, upon the consummation of the sale of
Farrow's interest, the company caused an assignment to it of
Farrow's application to be made, and a power of attorney to
be executed by Farrow to the company's attorney for the pur-
pose of permitting the company to prosecute applications for
patents, after which, under its rules, the Patent Office would
recognize Farrow no more. It charges that the company thus
having the whole matter in its own hands and power is failing
to prosecute the applications, and will allow the claims to be
rejected or lapse upon points easily obviated, in furtherance of
a scheme to substitute the reproduction of Farrow's device, and
thus, it is implied, to get rid of the contract.

The answer does not need to be stated. It admits the con-
tract, but denies the plaintiff's case, charges him with fraud
and sets up that his invention had been anticipated by a patent
to Stover and Hance and otherwise, and that it was impossible
to obtain a patent for it and that, therefore, the defendant was
not bound by the contract further. The case went to a hearing
and a decree was made to the effect that the plaintiff was enti-
tled to royalties upon all the devices manufactured by the de-
fendant embodying the inventions mentioned in the plaintiff's
applications, and specifically upon devices manufactured under
the patent to Morrow, and the cause was referred to an auditor
to state the account. This decree was affirmed by the Court
of Appeals for the District. 16 App. D. C. 468. It was found
that one of Farrow's applications was placed in interference
after its patentability had been allowed, and thereupon was
abandoned, his acquiescence not appearing, and that the other
was not contested, and, after some modification, was allowed
and authorized to go to an issue, but was permitted by the com-
pany to lapse. The purchase by the company of the Stover
and Hance patent and an interest in the Morrow patent and
the adoption of the latter for the purpose of evading the con-
tract with Farrow were found.

After the decree which we have mentioned, the defendant
moved for leave to amend its answer, and to introduce new tes-

timony, on the grounds that the plaintiff knew that the broad claim for a coasting device in combination with a back-pedalling device had been anticipated by the Stover and Hance patent when he made the contract, that the defendant had been under a misapprehension as to the scope of the contract and of the suit until the former decision, and that it now had learned that there were other patents which would defeat any broad claim on the part of Farrow, etc. The motion was allowed by the Supreme Court, but on a second special appeal the Court of Appeals held that the Supreme Court was not at liberty to allow the motion after the decree directing an account had been affirmed by the Court of Appeals, until leave had been granted by the latter, and also held that no sufficient grounds for an amendment were shown, as no fraud on the plaintiff's part was made out and it appeared that the company knew of the Stover and Hance patent and sufficiently understood the situation when it made the contract, and as the company certainly knew the facts when its former answer was filed. 18 App. D. C. 101. We are satisfied that the company suffered no injustice by this decision, and, in view of our conclusion upon the merits, we need say no more about it.

The case went to an account, and before the auditor Farrow sought to make the defendant account not only for the Morrow device heretofore mentioned, but also for another, known as Exhibit E 10, which the company had been manufacturing since the bill was filed. The auditor rejected this claim on the ground that an important part of the Farrow device was not used in E 10, that there was a radical difference in both construction and operation, and that one could not be called the mechanical equivalent of the other. On exceptions the auditor was directed by the Supreme Court to include royalties on E 10 in his account. Accordingly he made a further report, which, after some subordinate modifications, was confirmed by the Supreme Court and by the Court of Appeals, 23 App. D. C. 411, and the defendant ordered to pay the amount found due. From this decree the defendant appeals. It takes the technical ob-

jection that E 10 was not within the scope of the bill or the reference, and the substantial one that it was not within the scope of the contract. There is also an objection to the allowance of interest, because it was not claimed in the earlier hearing, but, as the defendant says, was waived.

We do not perceive any sufficient reason for saying that the plaintiff was estopped to claim interest. As to the technical objections to including E 10 in the account, the bill charges that a large number of devices similar to Farrow's are being manufactured and sold by the defendant, avers the plaintiff's ignorance of details and want of means of learning them except by discovery, and prays for disclosure of the number of both the devices manufactured, sold and held by the defendant. The word "both" means in the context the Farrow brake and the Farrow coaster, and the disclosure obviously is intended to include substitutes. An account is prayed of the Farrow brakes and of the device substituted by the defendant for the same. This, we think, means not merely the specific Morrow device previously referred to, but any device the defendant might be using, in view of the plaintiff's alleged ignorance, as is made plainer by the fact that the bill goes on to pray that any improvement or elaboration in the original device may be declared to have been made by the defendant for the benefit of the parties to the contract. The decree directing an account specifically mentions the first Morrow device it is true, but it declares in general terms the rights of the plaintiff to royalties upon all devices manufactured by the defendant and embodying the inventions mentioned in the contract, and directs an account in accordance with the decree. We are of opinion that these terms warranted the auditor in charging royalties upon any device found to come within the contract, and we agree with the Court of Appeals that the defendant had sufficient opportunity to contest the claim, and that therefore the objection is purely formal. No special point is made of the fact that the use was after the filing of the bill.

The real questions in the case are whether the first mentioned

Morrow device and the subsequent E 10 fall within the scope of the contract, and these questions depend more upon a careful construction of that instrument than upon nice discriminations between the patents that were or might have been issued. If either of the contrivances used embodies the invention described in Farrow's applications, then the defendant is bound to account for it by the express terms of its covenant, unless the contract is at an end. It is argued that the contract is at an end, that there was a total failure of consideration, because, it is said, there was no invention disclosed by Farrow. In answer to this it is enough to say that, although patents were refused upon some of his claims irrespective of any fault of the defendant, others were allowed, and there was no such final adverse action of the Patent Office upon either application as a whole, as to exonerate the defendant by the terms of the agreement which we have recited. An appreciable part of Farrow's supposed invention was upheld and remained in the defendant's hands. We are spared the necessity of considering how much, or whether there was so considerable a failure of what was expected that it would have warranted a rescission of the contract outside of its express terms, by the fact that the defendant still keeps what was assigned to it. On February 15, 1898, it wrote to Farrow that it could not get a patent that was worth a pinch of snuff, but so far from tendering a reconveyance, went on to say that if the work which the company was turning out "holds up all right we may be able to work your brake in with ours, but as to this it is uncertain and we doubt it." Of course the defendant could not rescind the contract without returning what it had received under it. So the contract remained in force. See *United States* v. *Harvey Steel Co.,* 196 U. S. 310, 315, 316.

We come back to the construction of the contract. The royalty is to be paid on the "invention above referred to." The use of the word invention does not open the state of the art and allow the defendant to meet the plaintiff's claim by proving that he had invented nothing new. The royalty is to

be paid on the invention described in the specified applications —that is to say, on the contrivances there described—unless and until there is final adverse action by the Patent Office. That is the measure of the defendant's self-protection. It could not have asked or been allowed more. For it took an assignment of Farrow's right, title and interest, took charge of his applications and agreed to defend the invention against infringement, which of course involved maintaining its novelty and patentability. It had all Farrow's interests in its hands and it took the risk of their worth, except as against what the Patent Office might do. It should be repeated that, so far as the company made any device embodying Farrow's invention, by the fair construction of its express covenant it was bound to account, whether the manufacture was ostensibly Farrow's or not, and it was not left merely to an action for such damages as it could prove.

On the other hand, the contract was not made on the footing that no coaster or no combination of coaster and brake ever had been invented, and that the whole field belonged to Farrow. Both parties knew something of the state of the art. The very facts which show that they stood on an equal footing and that the company was not deceived by Farrow, show that. The contract shows the same thing on its face. It recites that Farrow has invented, not a mechanism for coasting and braking, but an improvement pertaining to such mechanism. It was a contract having definite reference to the course of the Patent Office, and was for the contents of the application already filed. The application recognizes the existence of coasters. So that the contract only embraces what the parties reasonably may be understood to have expected to be patented. Furthermore, the provision for the cessation of payments on final adverse action must be applied to such claims as were rejected for want of novelty, and after such rejection Farrow can make the defendant account only for the use of devices embodying what remained of his claims. Obviously, also, the fact that, subject to the foregoing qualifications, the defendant took the risk of

the value of Farrow's alleged invention, even when coupled with its covenant to use due business diligence in pushing their sale, did not preclude it from using any later invention, if one were made which superseded Farrow's, and did not embody it. Due business diligence would not require it to enter into a hopeless contest, and would not prevent it from avoiding such a contest by purchase. In that event it would not be accountable to Farrow for royalties on the new machine. See *Thorn Wire Hedge Co.* v. *Washburn & Moen Manufacturing Co.*, 159 U. S. 423.

Applying this construction to the case, there is little difficulty in arriving at our judgment. The defendant at the original hearing, when the first Morrow device alone was in question, offered no evidence to controvert that of the plaintiff's expert that it was a palpable attempt to evade Farrow's rights. Its argument upon that point before us depended largely upon the contention that in view of the state of the art Farrow's claims must be narrowly limited, and gave too little effect to the contract. It is evident from the latter as well as from the evidence that a patent of a certain breadth was expected. The plaintiff, on the other hand, did not chiefly rely upon maintaining that the second device, E 10, would have been an infringement of any patent that the contract can be taken to have contemplated, but depended mainly upon construing the contract as binding the defendant to pay royalties if any other than Farrow's braking and coasting device were used. Therefore a summary statement of the nature of the different devices is all that is necessary to complete our disposition of the case.

In Farrow's application and Morrow's first device there was the same clutch mechanism on the rear wheel to permit coasting, and in both a contrivance for bringing a brake shoe to bear upon the rear wheel by back pedalling. Farrow accomplished this result by means of a hood pivoted to the bicycle frame, embracing the upper run of the chain and having a pivoted tooth or pawl. With the hood is connected a rod having the brake shoe on its end. Back pedalling, causing the chain to

slacken, lets it drop down upon the pawl and engage it, and thereby pulls back the hood and rod and brings the brake shoe to bear. By a second device, which the defendant is not in a position to say was not patentable, the brake was applied by the front instead of the rear sprocket wheel, which in case of back pedalling engaged a lever and put on the brake. Morrow used the front sprocket wheel and made it apply a lever with a brake shoe by means of a clutch. The details of the means of application differ, but it cannot be doubted that assuming the novelty in Farrow's invention which the contract assumes, Morrow, in the language of the contract, was embodying that invention. It covered the very thing which Farrow's invention was expected and mainly relied on to supply. Taking into account the fact that the defendant did not make due efforts to carry out his application, and that it certainly does not appear that the Morrow device was so much, if at all, better than Farrow's, that due business diligence did not require the company still to push the latter, we are of opinion that on this item it properly was held to account.

Farrow also embraced a hub brake in his applications. One of his devices was to have the rear sprocket wheel connect with the hub of the rear wheel by a screw clutch. When the sprocket wheel was moving forward it was screwed into fixed connections with the hub. When the pedals were held fast, so as to hold the sprocket wheel also fast through the medium of the chain, the bicycle, continuing its motion, unscrewed the sprocket wheel from the hub, disconnected it and coasted. Back pedalling brought a projection on a spring in and attached at one end to the rear sprocket and encircling the hub, into contact with a fixed point on the frame, and thus caused the spring to embrace the hub so long as pressure was applied. On the presure being released, the spring expanded and allowed the hub to revolve loosely within it. In the coasting or braking, it will be seen, the sprocket wheel was moved along its axis a short distance outward from the rear wheel, thus giving a slant to the chain. When a forward movement was resumed the tendency

of the chain under the pressure upon it to get back into a straight line was enough to carry the sprocket wheel inward again upon its axis so as to lock it once more to the rear wheel by the screw clutch. There are further details, but this simple outline is enough for our purposes, which are only those of broad comparison and contrast.

In Exhibit E 10 the characteristic lateral motion of the sprocket wheel on the extension of the hub does not appear, and neither Farrow's rotating brake spring nor his lever is used. The engagements are effected by the movement of a clutch ring with cam inclines, the sprocket wheel having coöperating cam inclines. When the sprocket wheel moves forward the latter cam inclines ride upon the former, force the clutch ring inward and allow it to grasp the hub by friction and revolve with it. On back pedalling the square shoulders of the cam inclines engage, the clutch ring is moved backward with the sprocket wheel, and cam inclines on the inner side of the ring force a brake ring inward into a hollow conical brake shoe connected with the frame of the machine and having no rotary movement. The brake shoe thus is forced inwardly into a brake cup and effects the braking by its friction. In this case, as in the former, a general indication of the nature of the device is sufficient on the question whether the latter embodies the former in the sense of the contract. This question is answered by the description which we have given. It is true that in both the sprocket wheel is arranged to engage or disengage with the main wheels of the machine, to allow coasting and to brake by a reverse action of the rider's feet. But the methods by which these results are accomplished are so different that it is only on the assumption that Farrow was in the broadest sense a pioneer, and had covered the whole ground, or at least that the contract put him in that position relatively to the defendant that the claim in respect of E 10 could be allowed. It is not pretended that Farrow occupied such a position as an inventor, and our construction of the contract does not give it the supposed extent. The auditor found that there was a radi-

cal difference between the contrivances in construction and operation, and there has not been and could not be a finding to the contrary. The ground on which the account was ordered was that the contract required it, notwithstanding all the difference which the auditor found. We could not come to that conclusion unless we at least were satisfied that it was inconsistent with due business diligence in pushing Farrow for the defendant to take up with E 10. The witnesses pointed out important superiorities in the latter, which we need not repeat, in the way of avoiding clogging by mud or ice, in applicability to a chainless machine, in more immediate and certain operation, and in requiring a less continuous exercise of force. On these points they were not contradicted. If, as we think, E 10 did not embody Farrow's invention, and if the company reasonably and honestly thought it a better thing, it had a right to do what it did. We cannot say that it was not warranted in its preference of E 10, or that it was not honest in its choice. It follows that with regard to this the decree must be reversed.

There was evidence that the defendant had sold out to another company of a nearly similar name. It is enough to say that it does not appear that the defendant is not still in existence, but on the contrary it would seem that the corporation still exists.

*Decree reversed and case remanded with directions to reinstate the auditor's first report so far as the same disallows a claim in respect of E 10.*