### THOMSON SPOT WELDER CO. v. NATIONAL ELECTRIC WELDER CO. et al.

(District Court, N. D. Ohio, E. D.   August 1, 1917.)

No. 431.

1. PATENTS ☞211(1)—INJUNCTION AGAINST VIOLATION OF LICENSE CONTRACT GRANTED.

The owner of a patent for a welding process, which, after validity of the patent had been adjudicated entered into a contract granting a license thereunder during its term, by which the licensee agreed not to question or contest the validity of the patent, *held* entitled to a preliminary injunction to restrain the licensee and its officers from violating the contract, and requiring them to observe it in good faith until their respective rights could be adjudicated.

2. PATENTS ☞212(1)—LICENSEE CAN SELL ITS BUSINESS IN GOOD FAITH.

A licensee under a patent, not obligated to continue in business or to make and sell any minimum number of machines, is free to sell its property and business, where the sale is in good faith, and not merely colorable, to avoid the obligations of the contract.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Thomson Spot Welder Company against the National Electric Welder Company and others. On application for preliminary injunction. Granted.

William L. Day and Ernest Angell, both of Cleveland, Ohio, for plaintiff.

Luther Day, of Cleveland, Ohio, Melville Church and A. S. Pattison, both of Washington, D. C., and Thomas F. Turner, of Canton, Ohio, for defendants.

WESTENHAVER, District Judge. This application for preliminary injunction was heard and submitted for decision on the verified bill and exhibits, verified answers, and affidavits filed on behalf of both parties. In disposing of this application, I deem it sufficient to state merely the conclusions to which I have come.

[1] Complainant's patent, No. 1,046,066, issued to Johann Harmatta, has been adjudicated to be valid by the United States Circuit Court of Appeals of the First Circuit. This adjudication became final in July, 1916. Thereafter complainant entered into a license agreement with the defendant, the National Electric Welder Company, granting it permission to use the Harmatta and other patents owned by complainant until the expiration of the Harmatta patent. This agreement, in addition to other terms, contains a clause whereby the National Electric Welder Company admits the validity of the Harmatta patent, and of all patents relating to spot or point welding machines now owned by complainant, and agreed not to question or contest, during the life of said Harmatta patent, the validity or terms thereof, ,or the application thereof to the process of spot or point welding machines utilized therefor. Substantially all other makers of machines for the utilization of this process, it is alleged, have entered into similar license agreements.

This adjudication of validity and this license agreement with the National Electric Welder Company, and also with other makers of machines, for utilizing this process, create, in my opinion, a business status between complainant and defendant, which complainant is entitled to have preserved in its entire integrity until a hearing of this cause may be had upon the merits, and that complainant is entitled to a preliminary injunction for that purpose.

The two defenses urged upon me—(1) that these license agreements create a combination in restraint of trade, which is in violation of the United States Anti-Trust Law and the Ohio Anti-Trust Law; and (2) that the Harmatta patent is in fact invalid, and that a good defense and adequate evidence to support this contention is in existence, but was not brought forward nor considered by the United States Circuit Court of Appeals of the First Circuit—are not, in my opinion, sufficient to justify me in refusing to protect by injunction this existing business status from demoralization and disintegration until a final hearing on the merits can be had. These two defenses cannot properly be tried and finally determined on a preliminary application, but ought only to be decided after a full hearing and carried into a final decree.

The evidence, in my opinion, also shows that the National Electric Welder Company and its officers are not keeping, and have not in good faith kept and performed, all the terms and conditions of its license agreement with complainant, and, further, that their attitude, as disclosed by their answers and affidavits, not to mention complainant's affidavits, raises more than a suspicion of their intention to keep and observe in good faith the provisions of this license agreement.

The conduct, in particular, of Fred P. McBerty, active manager of the National Electric Welder Company, shows a course of conduct directly inconsistent with a past purpose or with a sincere intention to observe in good faith that part of the agreement binding the National Electric Welder Company not to question or contest the validity of the Harmatta patent.   His co-operation with other defendants over a long period, in procuring evidence, making experiments, and planning for an attack on the Harmatta patent, is not justified by the excuses put forward in his behalf, namely, that evidence of prior use in his possession may be forced from him by legal process.   It is undoubtedly true that, when called as a witness he should testify to any facts in his knowledge, and that one is not justified in destroying evidence relating to a pending or threatened litigation; but it is also true that, when a controversy touching the validity of a patent has been settled by judicial decision or compromise or agreement, and one with knowledge thereof enters into a license agreement of the kind and character now under consideration, he should observe an attitude of good faith and loyalty towards the licensor, and the business in which the licensor and licensee are jointly interested, so long as the license agreement remains in force.

Complainant, in my opinion, is entitled, on the prima facie showing made, to a preliminary injunction, enjoining and restraining the defendants, the National Electric Welder Company, Fred P. McBerty, and N. A. Walcott, and all other officers and employés of the National Electric Welder Company, from violating directly or indirectly, or from refusing or failing directly or indirectly to observe, each and all of the terms and conditions of the license agreement in question, and also enjoining and restraining the other defendants, and each of them, from inducing, aiding, or encouraging the National Electric Welder Company directly or indirectly so to do.

[2]  The injunction order should be so limited as not to enjoin or restrain the making or carrying out of any contract of sale by the National Electric Welder Company of all or any part of its assets, made or entered into in good faith, and with a bona fide purpose and intent to sell and dispose of the same.   In order to avoid possible misunderstanding, some observations should be made touching the proposed sale by the National Electric Welder Company to Henry C. Milligan of all its property and assets, other than its license contracts and agreements and cash in bank and accounts receivable.

This license agreement does not oblige the National Electric Welder Company to manufacture and sell any minimum number of machines, nor to continue in business during any specified period.   It does not oblige the defendant to devote its plant and assets in good faith to

the continuous manufacture and sale of machines for utilizing the Harmatta process. The National Electric Welder Company may therefore, notwithstanding the terms of said license agreement and this injunction, sell and dispose of any or all of its assets, and may cease to do business. It cannot. be restricted in its power of alienation merely because it knows that the purchaser intends to use the same in manufacturing and selling in opposition to the Harmatta patent. The contemplated sale must, however, be an actual bona fide sale, and not a sham or subterfuge, whereby, through the use of the corporate form, the present officers and stockholders of the National Electric Welder Company may continue directly or indirectly in business, and avoid the obligations of this license agreement.

The defendants, other than the National Electric Welder Company and its officers and stockholders, are free to contest the validity of the Harmatta patent. They may, if acting in good faith and under an honest belief in the invalidity of the Harmatta patent, do all the things shown by their affidavits and exhibits to have been done by them. The legitimate exercise of these rights will not be interfered with by injunction. It is proper, however, to require of them to respect the business status created between the plaintiff and the National Electric Welder Company by this license agreement, with the same good faith and to the same extent as the licensee and its officers are required to observe and respect it. They may not, directly or indirectly, induce, aid, or encourage the breaking or violation of that license agreement, at least not until a final hearing can be had. The right to participate in the purchase of assets from the National Electric Welder Company is as large, and no larger, than the rights of the National Electrict Welder Company to sell, as has already been stated herein.

A decree will be entered in conformity to this memorandum, awarding a preliminary injunction, limited in the manner above indicated. A bond in penalty of $10,000 will be required.