## UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORA-
## TION v. SOUTH ATLANTIC DRY DOCK CO.

(Circuit Court of Appeals, Fifth Circuit. June 12, 1924.)

No. 4171.

1. **Principal and agent ⊚⟹69(2)—Principal may recover profits made by agent, though contract inconsistent with agency.**

An agent violates his duty by secretly entering into relations or transactions concerning the subject-matter of the agency, in which he has interests adverse to those of his principal, and the principal on acquiring knowledge of the facts, may repudiate the transaction and recover from the agent profits realized by the latter by his breach of duty.

2. **Principal and agent ⊚⟹76(1)—Permitting agent to complete partly executed fraudulent contracts not waiver of right to recover profits previously illegally made.**

Inspectors employed by defendant shipowner secretly entered into a partnership which secured contracts from defendant for repair work, later, on learning the facts, defendant discharged such employees and canceled the unexecuted contracts, but permitted those partly executed to be completed. *Held* that, so far as the contracts were performed thereafter, it was liable for the agreed compensation, including profits, but that in an action therefor it was entitled to recover by way of recoupment or in reduction of damages the profits illegally made by the partnership before the fraud was discovered.

3. **United States ⊚⟹52½, New, vol. 19A Key-No. Series—Fleet Corporation liable on contracts for repairs.**

Contracts made by the Fleet Corporation for work on ships in its possession and operated by it are enforceable against it, though the ships are owned by the United States.

In Error to the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Action at law by the South Atlantic Dry Dock Company against the United States Shipping Board Emergency Fleet Corporation. Judgment for plaintiff, and defendant brings error. Reversed.

See, also, 284 Fed. 723.

I. V. McPherson, Sp. Asst. Atty. Gen., Wm. M. Gober, U. S. Atty., of Tampa, Fla., and Maynard Ramsey, Asst. U. S. Atty., of Jacksonville, Fla. (William M. Gober. U. S. Dist. Atty., of Tampa, Fla., Chauncey G. Parker, of Newark, N. J., Maynard Ramsey, of Jacksonville, Fla., Lake Jones, of Tampa, Fla., and I. V. McPherson, of Aurora, Mo., on the brief), for plaintiff in error.

John W. Dodge, of Jacksonville, Fla., for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and ERVIN, District Judge.

WALKER, Circuit Judge. ' This was an action, brought December 1, 1919, by the defendant in error, a Delaware corporation, against the plaintiff in error, United States Shipping Board Emergency Fleet Corporation. The parties are herein referred to by their designation in the trial court. The case went to the jury on the first count of the declaration. That count embodied common counts for goods sold and delivered and for work and labor done and material furnished to de-

fendant by plaintiff and its assignors, Duval Ship Outfitting Company and Duval Dry Dock Company; such assignors being partnerships which have been dissolved. A bill of particulars, which was made an exhibit to and a part of that count, shows that the amount claimed was the aggregate amount of vouchers for work and materials performed or furnished for or to named ships during several months beginning May 30, 1919, less the aggregate amount of payments made on account of such vouchers. In March, 1923, the defendant applied for leave to file the following pleas:

"(7) And for a seventh plea defendant says that the plaintiff ought not to further maintain this action against it, the defendant, for that since the institution of this suit, and on, to wit, the 27th day of January, A. D. 1923, Wm. D. Denney, Governor of the state of Delaware, under the laws of which state plaintiff was incorporated, issued his proclamation according to the provisions of sections 75 and 76, chapter 6, of the Revised Statutes of 1915 of the state of Delaware, declaring the charter of plaintiff repealed, and from and after said date it became unlawful for any person or persons to exercise, or attempt to exercise, any power under the charter of said corporation.

\* \* \* \* \* \* \* \* \* \*

"(11) And for an eleventh plea defendant says that all of the said work done by plaintiff and its assignors was done for the United States of America, and the said ships on which said work was done were owned by the United States of America."

The court denied that application. The case was tried on issues joined on defendant's plea of never indebted, and on its amended third plea, of which the following is a copy:

"(3) And for an amended third plea defendant says that on or before September, 1918, said L. W. Walters, James H. Strang, and H. C. Thomas became employed by defendant at its then district office in Jacksonville, Fla; that on or about said times said Walters, Strang, and Thomas were or became acquainted with each other, and were associated more or less in their work for defendant; that in December, 1918, and while in the employ of defendant, secretly, and without the knowledge of defendant or its officers in charge of said district office at Jacksonville, Fla., they organized a copartnership known as said Duval Ship Outfitting Company, and without disclosing to defendant and its said officers their connection with said Duval Outfitting Company, proceeded to procure for themselves, in the name of said partnership, orders for work on vessels referred to in said declaration.

"Defendant further says that shortly thereafter, and while said Walters, Strang, and Thomas were still in the employ of defendant, said Duval Dry Dock Company was secretly and without the knowledge of defendant or its said officers organized by said Walters and Strang, and took over the business of the former partnership, said Duval Ship Outfitting Company.

"Defendant further says that, after the formation of Duval Dry Dock Company as aforesaid, said parties proceeded to procure, without disclosing to defendant or its said officers their interest in either of said copartnerships, orders for work on vessels referred to in said declaration.

"Defendant further says that some of said orders aforesaid, on which plaintiff is basing this suit, were executed by one of the copartners above mentioned; that a great many of said orders given during the months of February, March, and April, 1919, were executed by one of said copartners above mentioned, with full knowledge of the other said copartners.

"That said Walters remained in the actual employ of the defendant during said times until about the 1st of March, 1919, and said Strang and Thomas remained in the actual employ of the defendant during said times until on or about the 31st day of May, 1919, at which time defendant became aware of the facts hereinabove stated, and discharged said Strang and Thomas; that during all the time said Walters, Strang, and Thomas remained in the employ of defendant as aforesaid each of them was on the pay roll of the

United States of America, and was paid his salary semimonthly in the form of checks drawn upon the Treasury of the United States.

"Defendant further says that on or before May 31, 1919, when defendant became aware of the facts above mentioned, it paid said Walters, Strang, and Thomas large sums of money, sufficient to and which did cover the actual cost of all work done by said partnerships, including labor, material, and overhead charges, and, in addition thereto, a very substantial profit in connection with said orders and work and on account thereof.

"Defendant further says that from and after said May 31, 1919, after the discovery by defendant of said facts as aforesaid, defendant has continued to pay said partnerships and plaintiff sums sufficient to pay and cover all labor and material bills and all actual overhead and other actual expenses in connection with the completion of the work on vessels referred to in said declaration for which orders had previously been given.

"Defendant further says that the sums for which plaintiff sues do not cover work done or material furnished by either plaintiff or its said assignors for or on behalf of defendant, nor interest therein, but represent an illegal and unearned profit, and for which defendant is not indebted, in that the contract or orders under which it is claimed that said balance is due arose in fraud and were and are illegal and void and contrary to the laws of the United States of America."

There was evidence tending to prove the following: From about September, 1918, and throughout part of the year 1919, James H. Strang was chief inspector, and L. W. Walter and H. C. Thomas were inspectors of hulls, for defendant at Jacksonville, Fla. During December, 1918, they, without the knowledge or consent of defendant, formed a partnership under the name of Duval Ship Outfitting Company, and as such procured contracts from defendant for repairing and finishing up work on ships. Those contracts were made by the partnership accepting orders given for specified work and material to be done and furnished for specified ships. The amounts to be paid for such work and material were determined by rates prevailing at the Navy Yard at Charleston, S. C. The compensation for labor performed, or for materials furnished, was the amount paid for labor or materials plus a fixed per cent. of that sum for overhead, and plus a fixed per cent. of the aggregate of the amounts paid for labor or materials and overhead, as profit. Vouchers were made out and rendered weekly, showing separately amounts earned for labor or material, for overhead, and for profit, and payments on such vouchers were made as the work progressed. Some time after that partnership was formed, the name of it was changed to Duval Dry Dock Company. Said three hull inspectors were forbidden by the defendant to engage in such a partnership, and were told that, if they did so, they must separate themselves from the defendant. While they were accepting orders, doing work and furnishing materials as above stated, they denied to officials of the defendant that they were interested in such partnership. On January 22, 1919, Strang signed an instrument which purported to evidence a transfer of his interest in the partnership to his brother. On April 18, 1919, Thomas assigned his general interest in the partnership to Walter, but retained his interest in contracts upon which the firm was then engaged. Walter resigned his position as hull inspector on March 15, 1919. He ceased to act as an employee of the defendant about two weeks before that date. The duties of the three employees mentioned included that of inspecting work done by the firm of which they were members.

On May 31, 1919, defendant discovered that its employees had been and were interested in said partnership, and on that date discharged Thomas and Strang. At that time defendant took from said partnership all ships upon which no work had been done, and allotted to others contracts for labor and materials for such ships. The work of completing repairs on ships upon which the work contracted for was then partially performed was allowed to be finished by the firm as then constituted and by the plaintiff after it was incorporated in July, 1919, and, as assignee, succeeded to the rights of the contractors. After May 31, 1919, payments were made from time to time for work and labor on the contracts retained by the partnership, but part of the amounts called for by vouchers rendered was withheld by the defendant; the aggregate amounts paid covering all that was payable for labor and materials, all that was payable for overhead, and part of that payable for profits. To testimony offered by the defendant to prove the amount of profits paid to the partnership prior to May 31, 1919, the plaintiff objected, on the ground that evidence as to profits paid prior to May 31, 1919, was immaterial and irrelevant, and on other grounds. The court sustained that objection, its remarks made in that connection indicating that evidence as to the amount of profits paid before defendant learned that its employees were members of the contracting firm was considered to be inadmissible. The payments on the contracts mentioned were made by checks drawn on the Treasury of the United States. The court refused to give the following charges requested by the defendant:

"The court charges you that the employee is bound not to act in antagonism or opposition to the interests of the employer. Every one, whether designated agent, trustee, servant, or what not, who is under contract or other legal obligation to represent or act for another in any particular business, or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty, as well as of law. The servant will be required to account to his employer or principal for any gift, gratuity, or benefit received by him in violation of his duty, or any interest acquired adverse to his principal, without a full disclosure, though it does not appear that the principal has suffered any actual loss by fraud or otherwise. * * *

"The court charges you that, if you find that L. W. Walter, J. H. Strang, or H. C. Thomas, while in the employ of defendant as an inspector, was a member of a partnership that entered into or performed contracts for defendant, that defendant was not aware of the fact that its inspectors were interested as such partners when said contracts were awarded, and that it thereafter became aware of such fact and terminated such employment as its inspectors, then it had the right to withhold from said partnership and its assignee, the plaintiff in this suit, a sum equal to all profits earned or paid prior to such discovery, and if you believe the profits earned and due equal the amount sued for, you should find for the defendant. * * *

"If you find that the contracts involved in this suit were to be performed on ships being built, outfitted, or repaired for the United States, and plaintiff and its assignors knew at such time such fact, and knew that said ships were to be turned over to the United States when completed, then you shall find for the defendant."

The court gave the following charges requested by the plaintiff:

"The court charges you that under the third amended plea of defendant the contract sued upon was not void, but voidable, even if you believe from the evidence such plea is sustained; that if you further believe from the evi-

dence that the defendant, or its officers, after learning of the matters alleged in said plea, continued to do business with the said parties, and received and accepted the benefits of the said contracts, and made payments of large sums of money to the plaintiff or its assignors for and on account of said contracts, and requested the said assignors and the plaintiff corporation to proceed with work, and that the plaintiff herein did for many months carry on and continue said original orders for work, and did, as assignee of the parties composing the Duval Ship Outfitting Company and Duval Dry Dock Company, also receive other orders for work, and that there was no direct and open disavowal by defendant of such original orders, then the defendant ratified the said orders originally given by its failure to repudiate the same, and by allowing the plaintiff herein as assignee to proceed with such work and by receiving and accepting the benefits thereof. * * *

"As to the issue of illegal profits raised by the amended third plea, the court further charges you that it was the duty of the defendant corporation, within a reasonable time after it discovered any facts such as set forth in said amended third plea, to repudiate the orders and contracts for work affected thereby, and to notify the other parties to the contracts not to go on with work and orders and contracts. If you should find from the evidence that the allegations of said third plea are true, still you must further find from the evidence that the defendant repudiated the original orders and contracts, and that the defendant is suing for illegal profits unpaid at the time of such repudiation. If you find from the evidence that the defendant did not repudiate the original orders, but afterwards paid the profits under such orders, and directed the plaintiff, or its assignors, to go on with the work, and to carry out and complete performance thereof, and that there was no unfairness or fraud in the execution of said work, and that the defendant paid for labor and material for many months after it found the facts claimed in said third plea, and gave during said months, and after said discovery by it, further and other orders for work to both the assignors and the plaintiff herein, and made large payments to both of them, and such payments, or some of them, were to cover and did cover alleged illegal profits, and that plaintiff agreed to carry out the original orders for work, and defendant agreed to let plaintiff do so, and that plaintiff did carry out and perform the work thereafter, then the court charges you that the defendant is estopped to deny liability for even such sums as were profits, and that defendant ratified what might have been avoided by it as a voidable contract, if you should find that contract was voidable."

The charge given to the jury by the court of its own motion contained the following:

"As I understand the testimony, the item sued for in the declaration all accrued subsequent to May 30, 1919. Now, if the defendant was then notified of the interest of these employees in any contracts, it was the duty of such employer to cancel the contract. In other words, an employer cannot proceed and have his employee, after he has been notified of such interest of such employee, cannot have him proceed and finish the contract and say, 'No, I won't pay you any profits that you might have made by the performance of this contract,' because that would be an affirmation of such contract by the employer. He cannot affirm in part and deny in part. So, under this third amended plea, the jury will consider under this testimony whether the employer was made aware of the fact, if such is the fact under the testimony, that the employees of the corporation were interested in the carrying out and in the performance of the contract in which they had certain duties to perform, such as inspectors or otherwise. If you find from this testimony, or a preponderance of it, that such was a fact, then the plaintiff would not be entitled to recover any profit made by the contract; but if, on the other hand, you find that the employer, after being made aware of the interest of the employee in the performance of the contract, proceeded then subsequently to have that contract carried out by those employees, then the law would not permit him, after the performance of the contract and the acceptance of the benefits of the performance, to say, 'You are not entitled to the profits.' Under those circumstances, the plaintiff would be entitled to the profits."

The above-mentioned rulings are presented for review.

The averments of the special plea 7, which the court refused to permit the defendant to file, showed that after the suit was brought, and shortly before the making of the application to file that plea, the plaintiff ceased to have any legal existence. The statutes of Delaware referred to in that plea (sections 74, 75, 76, and 77, chapter 6, Revised Statutes of Delaware 1915) give to the alleged proclamation of the Governor the effect of rendering the incorporation of the plaintiff inoperative and void. A result of the ruling was to deny to the defendant the opportunity of proving that after the institution of the suit the plaintiff ceased to have the legal capacity requisite to the maintenance of any suit. There is no basis for a contention that the defendant was lacking in due promptness in presenting the plea. It did so less than two months after the state of facts upon which the plea was founded came into existence. We are not of opinion that action of the court in refusing leave to file that plea was free from error. But the plea' was one in abatement, and is within the influence of the provision that:

"There shall be no reversal * * * upon, a writ of error, for error in ruling any plea in abatement other than a plea to the jurisdiction of the court:" R. S. § 1011, U. S. Comp. St. § 1672.

[1, 2] An agent violates his duty by secretly entering into relations or transactions concerning the subject-matter of the agency in which he has interests adverse to those of his principal. If an agent does so, the principal, upon acquiring knowledge of the facts, may repudiate the transaction, and recover from the agent profits realized by the latter by his breach of duty. Hofflin v. Moss, 67 Fed. 440, 14 C. C. A. 459; Northern Pacific R. Co. v. Kindred (C. C.) 14 Fed. 77; 31 Cyc. 1434. ' Above-mentioned rulings of the court show that they were predicated on the theory that the defendant, by permitting the partially executed contracts to be completed after it discovered the vitiating fraudulent conduct of its employees in procuring and partially executing them, lost the right to the profits realized by the firm mentioned while the disloyalty of its members, who were employees of the defendant, was concealed. It appears that, upon the discovery of the fraud, the defendant cancelled the contracts with that firm so far as it was reasonably practicable to do so. It could not rescind the partially executed contracts without returning what it had received under them. Eclipse Bicycle Co. v. Farrow, 199 U. S. 581, 26 Sup. Ct. 150, 50 L. Ed. 317.

It is obvious that it was not practicable to return the labor and material which already had gone into the ships which were undergoing repairs. Where a contract induced by fraud has been partly executed, the defrauded party, certainly where it is not practicable for him to rescind, may retain what he has received under the contract and have his remedy for the damages to which he is entitled because of the fraud. By permitting the partially executed contracts to be proceeded with, the defendant did not release or waive its claim to the profits realized by the contracting firm while defendant's employees, without its knowledge, were members thereof. So far as the contracts sued on

were executed after the fraud was discovered and after the discharge of the disloyal employees, the defendant was liable for the agreed compensation, including profits. But by incurring such liability the defendant did not deprive itself of the right to redress for the fraud before it was discovered and a continuance of it was prevented. Wilson v. Hundley, 96 Va. 96, 30 S. E. 492, 70 Am. St. Rep. 837; Whitney v. Allaire, 4 Denio (N. Y.) 554; Allaire v. Whitney, 1 Hill (N. Y.) 484; Whitney v. Allaire, 1 N. Y. 305; Kingman & Co. v. Stoddard, 85 Fed. 740, 749, 29 C. C. A. 413; 13 C. J. 395; Page on Contracts, § 131; 31 Cyc. 1433.

The retention by the defendant of its right to profits wrongfully obtained from it by a firm while defendant's employees were secretly members of it was not inconsistent with defendant's conduct, whereby it incurred liability for stipulated compensation for what was done by such firm or its assign when no employee of the defendant was interested in such compensation. Talcott v. Friend, 179 Fed. 676, 103 C. C. A. 80, 43 L. R. A. (N. S.) 649. The claim of the defendant for profits realized by the plaintiff's assignor while it was composed in whole or in part of defendant's employees being one growing out of the contracts sued on, that claim was assertable in this suit by the defendant setting it up by way of recoupment or in reduction of damages. Whitney v. Allaire, supra; 34 Cyc. 674.

The above set out amended third plea alleges a state of facts giving rise to a right in the defendant to recover the amount of profits obtained from it by the firm mentioned prior to the discovery by the defendant that its employees were members of that firm. The legal sufficiency of that plea was not questioned by demurrer or otherwise. Its averments show the existence of a claim of the defendant which was enforceable by way of recoupment or in reduction of the amount claimed by the plaintiff. The defendant was entitled to sustain averments of that plea by evidence as to the amount of profits obtained from it by the firm mentioned before the defendant learned that its employees were members of that firm when it procured the orders or contracts under which such profits were obtained.

The court's rulings are inconsistent with the views above expressed. We are of opinion that reversible error was committed by the rulings to the effect that the defendant, by permitting, after it learned of the interest of its employees in contracts sued on, the execution of those contracts so far as they were unexecuted when such discovery was made, lost the right to the amount of profits obtained from it for the partial execution of such contracts before its discovery of the misconduct of its employees. We are aware of no good reason for giving to defendant's act in going on with the transactions after the elimination of the vitiating feature thereof the effect of a condonation by the defendant of the previously consummated wrong, of which it was, and apparently continued to be, the unwilling victim.

[3] It seems that it would not have been reversible error to refuse permission to file plea 11 at the time it was presented, even if the facts it alleged constituted a good defense. But its allegations were consistent with the claims asserted by the suit being enforceable against the defendant. Contracts of the defendant for work on ships pos-

sessed or operated by it are enforceable against it, though in a sense such work is done for the United States, defendant's sole stockholder, though the ships on which the work was done were owned by the United States, and this was known to plaintiff when it accepted the payments. Sloan Shipyards v. U. S. Fleet Corporation, 258 U. S. 549, 42 Sup. Ct. 386, 66 L. Ed. 762; Panama R. Co. v. Minnix (C. C. A.) 282 Fed. 47. We do not think that any evidence introduced or offered showed or tended to prove that the claims sued on were not enforceable against the defendant.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.