**DWIGHT & LLOYD SINTERING CO., Inc., v. AMERICAN ORE RECLAMATION CO.**

District Court, S. D. New York.

Aug. 5, 1937.

See, also, 44 F.Supp. 396; 44 F.Supp. 401.

Spencer, Ordway & Wierum and Otto C. Wierum, all of New York City, for plaintiff.

Davis, Polk, Wardwell, Gardiner & Reed, Theodore Kiendl, John L. Jackson, and A. S. Edmonds, all of New York City, for defendant.

BONDY, District Judge.

This suit was brought for the cancellation and rescission of patent licensing agreements and for an accounting of royalties. The defendant counterclaimed for an injunction against the termination of the agreements by the plaintiff, against plaintiff's competing with the defendant in a field exclusively set over to the defendant by the licensing agreements and for an accounting of plaintiff's profits and defendant's damages arising out of plaintiff's alleged competition with the defendant and plaintiff's neglect in bringing suit against alleged infringers of the patent.

By an order of reference made on consent, the Special Master was authorized to hear and determine the issues of fact and of law with the same effect as if tried by the court. The order provided that on the filing of the report of the Special Master, judgment should be entered in conformity therewith. Upon the court's advising the parties of difficulties which would arise upon an appeal from a judgment entered pursuant to this order, it was amended to provide that the Special Master should hear the issues and report to the court.

By an agreement dated April 7, 1911, defendant's assignors acquired from plaintiff's assignor an exclusive license of patents covering a process and apparatus for the sintering of ores, including the right to grant sublicenses in the iron and steel field. The licensees agreed to keep accurate records of the tonnage produced under each sublicense and to pay stipulated royalties to the licensor at stated intervals. The li-

censor received $35,000 in full paid non-assessable common stock of the defendant and was granted the privilege of naming one of the defendant's directors. The licensees agreed to pay as royalty three cents for each ton produced under the licensed process and apparatus by them and their sublicensees, and a minimum royalty increasing from $3,000 in the first year to $15,000 after the fifth year.

The defendant entered upon the business of exploiting plaintiff's patents in the iron and steel industry and it succeeded in doing a large business with the principal producers of iron and steel.

In 1931, defendant induced the United States Steel Corporation to accept a license under patents which it owned instead of a sublicense under plaintiff's patents. It is plaintiff's contention that the licensing agreements impliedly obligated defendant to work plaintiff's patents with due diligence and to refrain from exploiting a competing patent. The execution of the Steel Corporation license, it is urged, constituted a violation of both implied obligations.

The Special Master, on this issue, ruled that the agreements did not impose any obligations on defendant other than those expressed therein. He held that since the agreements contained no provision concerning the acquisition and use by defendant of other patents, no obligation preventing such acquisition and use could be implied. He predicated his ruling upon the fact that the agreements were carefully drafted by competent attorneys who sought to cover every contingency by explicit language. Consequently he felt that any omission in the agreements should be deemed to have been intentional and that the parties should be bound only by promises expressly made. Accordingly, he did not dispose of the sharply controverted question of fact concerning the defendant's actions and motives in connection with its license to United States Steel Corporation.

In arriving at this conclusion, the Special Master relied on Dixie Cotton Picker Co. v. Bullock, C.C.Ill., 188 F. 921, 923; Thomson Spot Welder Co. v. National Electric Co., D.C.N.D.Ohio, 260 F. 223, 225, each decided by a single judge; Thorn Wire Hedge Co. v. Washburn & Moen Mfg. Co., 159 U.S. 423, 16 S.Ct. 94, 40 L.Ed. 205; Eclipse Bicycle Co. v. Farrow, 199 U.S. 581, 26 S.Ct. 150, 50 L.Ed. 317.

■ Though there is language to the contrary in these cases, the court considers itself bound by the language and reasoning used subsequently by the Circuit Court of Appeals in this Circuit in Re Waterson, Berlin & Snyder Co., 2 Cir., 48 F.2d 704, followed in Driver-Harris Co. v. Industrial Furnace Corporation, D.C., 12 F.Supp. 918 and reiterated in Tesra Co. v. Holland Furnace Co., 6 Cir., 73 F.2d 553, 555. In the Waterson, Berlin & Snyder case [48 F.2d 709] Judge Augustus N. Hand stated: "In both countries [United States and England], where there has been a conveyance upon an agreement to pay the grantor sums of money based upon the earnings of the property transferred, the courts have implied a covenant to render the subject-matter of the contract productive—if the property was a mine, a covenant to mine, quarry or drill; if it consisted of a patent or copyright, a covenant to work the patent or copyright."

■ There is no valid distinction in principle between an assignment or conveyance and the exclusive license before the court. In each the entire fate of the subject of the assignment or license is in the hands of the grantee.

Nor does the provision for a minimum royalty payable whether or not the licensees actually used the patents affect the conclusion. In Driver-Harris Co. v. Industrial Furnace Corporation, D.C., 12 F.Supp. 918, the court followed the Waterson case, although the agreement there in suit provided for a minimum royalty. The effect of the minimum royalty provision however was not discussed by the court. It was discussed with the same result in Telegraph Dispatch and Intelligence Co. v. McLean, 8 Ch.App. 658. Cf. In re Railway and Electric Appliances Co. 57 L.J.Ch. 1027.

The circumstances surrounding the making of the agreements herein all indicate that the licensor intended to secure the exploitation of important patents by a company equipped to work them on a large scale, and intended not merely to grant a license which would yield the licensor a return dependent upon whether the licensee saw fit to use or not to use the patent.

■ The obligation to exploit diligently does not necessarily exclude all competition by the licensee with the licensed patent. Thorn Wire Hedge Co. v. Washburn & Moen Mfg. Co., 159 U.S. 423, 16 S.Ct. 94, 40 L.Ed. 205; Eclipse Bicycle Company v.

Farrow, 199 U.S. 581, 26 S.Ct. 150, 153, 50 L.Ed. 317. In the latter case the court stated: "Due business diligence would not require it [the assignee] to enter into a hopeless contest, and would not prevent it from avoiding such a contest by purchase" of a patent for a competing article.

■■ These decisions make it clear that mere ownership and use of a competing patent do not necessarily in themselves constitute a violation of the implied obligation to use due diligence in working the patent. Whether due diligence has been exercised is a question of fact to be determined in each case. The validity of the plaintiff's patents, their possible infringement by the defendant's patents, their value in competition with defendant's patents, the extent to which they are used by the defendant and the extent to which they must be used in sintering ore, the defendant's alleged bad faith and misrepresentations and all other circumstances surrounding the making of the license under the defendant's patents to the United States Steel Corporation must be considered.

These issues accordingly are referred back to the Special Master who heard the testimony and who was designated by the parties to pass on all issues in the first instance to report whether the defendant's action in making its agreement with the United States Steel Corporation, or its action in securing control of the patents involved in the license to the United States Steel Corporation were in violation of its implied agreement to work the plaintiff's patents with reasonable diligence.

■ The question whether the contract should be rescinded or whether less drastic relief is appropriate is also referred to the Special Master whose determination obviously will depend upon his findings on the question of breach.

■ The plaintiff also seeks to recover royalties under defendant's sublicense to the Buffalo Sintering Corporation. The license agreement of April 7, 1911, requires defendant to pay to the plaintiff a royalty of three cents on every ton produced by its sublicensees. Defendant made a sublicense to Buffalo Sintering Corporation providing for a royalty yielding a profit to defendant. The sublicense however provided that the sublicensee should enjoy a royalty rate as low as any which defendant might thereafter grant to any other sublicensee. Plaintiff knew of this agreement and received royalties under it for a long period. On January 28, 1929, defendant entered into a sublicense agreement with Bethlehem Steel Company providing that the maximum annual royalty should be $25,000 in consideration of the Bethlehem Steel Company's assigning certain patents to defendant. The defendant contends and the evidence tends to establish that plaintiff knew and approved of this contract. Thereafter Buffalo Sintering Corporation insisted that it was entitled to the lower rate reserved in the Bethlehem Steel Company's sublicense and it accordingly reduced its payments to defendant, which accepted them and correspondingly decreased its royalty payments to plaintiff which did not have any knowledge that the Buffalo Sintering Corporation rate had been reduced.

Plaintiff contends it is entitled to the full royalty of three cents a ton on all tonnage produced by Buffalo Sintering Corporation. Defendant urges that the plaintiff by its knowledge of the terms of these contracts and its acceptance of their benefits, approved the lower royalty rates and waived its rights to a three cent royalty. The fact that the Bethlehem Steel Company contract provided a consideration for the lower royalty rates in the form of the assignment of patents to the defendant disposes of the matter. Defendant's practical business reasons for lowering the rate to be paid by the Buffalo Sintering Corporation, as the Special Master stated, can not affect the contract between the parties to this suit. As a matter of strict contract right, extra consideration having been given by the Bethlehem Steel Company for a reduced rate, the Buffalo Sintering Corporation was not entitled to any reduction under its agreement. Plaintiff should have been consulted by defendant before the royalties payable by the Buffalo Sintering Corporation were reduced. Accordingly the deficiency in royalties must be paid to the plaintiff and the Special Master's conclusion concerning the Buffalo Sintering controversy are confirmed by the court.

■ Plaintiff also asserts that defendant did not acquire any rights to sinter in the non-ferrous field by virtue of the license agreements between the parties. The plaintiff, however, has not shown any damage to itself by reason of defendant's mere assertion that the licenses cover the non-ferrous field, including manganese. Nor does it appear that the defendant threatens or intends to enter the non-ferrous field.

Showing no injury and asking no relief by declaratory judgment or otherwise, the plaintiff is not entitled on the present record to consideration of this ground of complaint.

■ The plaintiff further complains that the defendant has refused to pay to the plaintiff any of the royalties it has collected from its sublicensees other than the United States Steel Corporation, since June 30, 1932. The defendant attempts to justify its failure to pay such royalties on the ground that its obligation to pay royalties under the license agreements has terminated. The defendant's precise contention can not be determined from its brief or from the report of the Special Master who decided the issue for the plaintiff. The Master's discussion is not clear and he did not make findings on this question sufficient to enable the court to pass upon it.

So far as the court can determine from the present record and the briefs, the agreements obligate the defendant to pay a royalty of three cents per ton produced from the licensed process and apparatus by the licensee or its sublicensees, the said royalty to be paid during the life of the licenses. The licenses are to continue in effect until the expiration of the last patent embraced by them. The only contractual provision under which the defendant could be released from this obligation is a clause stating that the licensee is not required to pay royalty for the use of the patents in any country in which the licensed patents essential to the operation of the process and apparatus have been declared void by a court of last resort.

It does not now appear that all the licensed patents have expired or that all the licensed patents essential to the operation of the process and apparatus have been declared void or that the royalties in question pertain to any product not produced under the licensed process and apparatus. Moreover, the Special Master having found for the plaintiff on this issue, he may be assumed to have found facts to support his conclusion.

However, in view of the doubts surrounding these issues and because the matter is being resubmitted in any event, the defendant should have an opportunity to present this question again before the Special Master if so advised.

■ The defendant's counterclaim alleges that the defendant was injured to the extent of "upwards of $785,584," by the plaintiff's delay of several years in bringing suit for infringement against one Greenawalt. The suit against Greenawalt when finally brought was dismissed, at least as to some claims, on the ground of laches. Dwight & Lloyd Sintering Co. v. Greenawalt, 2 Cir., 27 F.2d 823; Id., D.C., 20 F.2d 533. This contention is completely answered as the Special Master notes, by the fact that the defendant could have brought suit against Greenawalt and secured a timely adjudication. Independent Wireless Telegram Company v. Radio Corporation of America, 269 U.S. 459, 46 S.Ct. 166, 70 L. Ed. 357.

■ The counterclaim also alleges that the plaintiff, in violation of the license agreement giving defendant exclusive rights, conspired to compete and competed with the defendant through Sintering Machinery Company, formed by it for that purpose. It is alleged that Sintering Machinery Company competed and also interfered with defendant's business by unjustly criticising defendant's machinery to defendant's customers and by interfering with defendant's negotiations for contracts, and that Sintering Machinery Company threatens to continue these acts. The Special Master, after hearing the testimony, found that the defendant had failed to prove these allegations. His report is presumably correct and entitled to great weight. Equity Rule 61½, 28 U.S.C.A. § 723 Appendix. The testimony supports the Special Master's finding and accordingly the report of the Special Master on this issue is confirmed.

The suit is referred back to the Special Master for additional findings in accordance with this opinion. Specific exceptions will be ruled on after submission of the final report of the Master.